# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEVIN J. COOK, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-14-392-SPS |

## OPINION AND ORDER

The claimant Devin J. Cook requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born June 5, 1982, and was thirty years old at the time of the administrative hearing (Tr. 30, 153). He completed the twelfth grade, and has worked as a welder's helper (Tr. 22, 177). The claimant alleges he has been unable to work since February 1, 2009, due to back problems and depression (Tr. 177).

## Procedural History

On April 8, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and he applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on April 14, 2011. His applications were denied. ALJ Bernard Porter held an administrative hearing and found that the claimant was not disabled in a written opinion dated June 20, 2013 (Tr. 10-23). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk six hours total during an eight-hour workday; sit six hours total during an eight-hour workday; push/pull as much as he could lift/carry; and occasionally climb ramps and stairs but never climb ropes, ladders,

or scaffolds, or crawl. Furthermore, the ALJ determined that the claimant was unable to read very small print but could read ordinary newspaper or book print; must avoid exposure to unprotected heights, moving mechanical parts, or temperatures extremes; and required a sit/stand option which allows for a change in position at least every thirty minutes. Additionally, the ALJ stated that the claimant may miss one day of work per month and be off task up to 5% of the workday, and that due to psychologically-based factors, he was limited to simple tasks and simple work-related decisions. Finally, the ALJ stated that if the claimant could perform light work, he could perform sedentary work, *see* 20 C.F.R. §§ 404.1567(b) and 416.967(b) (Tr. 15). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *e. g.*, information clerk, house sitter, and office helper (Tr. 22-23).

**Review**

The claimant argues on appeal that the ALJ erred by: (i) failing to elicit proper testimony from the vocational expert (VE), and (ii) failing to properly evaluate an "other source" opinion from the claimant's chiropractor. The Court agrees with the claimant's first contention, and the Commissioner's decision must therefore be reversed and the case remanded for further proceedings.

At the administrative hearing, the ALJ elicited testimony from a VE to determine if the claimant could perform his past relevant work or if there were other jobs the claimant could perform with his limitations. He posed a number of hypothetical questions requiring the VE to assume various limitations and identify the work someone

4

with such limitations could perform. First, the ALJ posited an individual with the age, education, and work history of the claimant, who was

> limited to less than full range of light work with the ability to lift and carry 20 pounds occasionally, 10 pounds frequently; can sit for six hours; stand for six hours; can walk for six hours; can push and pull as much as they can lift and carry; they are limited to the occasional climbing of ramps and stairs; never climbing any ladders or scaffolds; never [INAUDIBLE] and crawling; unable to read very small print but could read ordinary newspaper or book print; should not work around unprotected heights or moving mechanical parts; they should not work in any environments where there would be temperature extremes; they were limited to simple tasks, simple work-related decisions; time off task to be accommodated by normal breaks.

(Tr. 51). The VE testified that such an individual would not be able to perform his past relevant work, then identified three light, unskilled jobs such a person could perform: (i) host or hostess, (ii) cleaner housekeeping, and (iii) information clerk, DICOT § 237.367-018 (Tr. 51-52). The next hypothetical posited an individual with all the same requirements as the first hypothetical, with the additional limitation of requiring a sit/stand option which allows for change of position at least every thirty minutes (Tr. 52). The VE testified that such a person could perform the previously identified position of information clerk, as well as the jobs of house sitter, DICOT § 309.367-010, and office helper, DICOT § 239.567-010 (Tr. 53). Finally, the ALJ adopted the two previous hypotheticals with the additional limitation that the individual would miss work one day month and be off task up to 5% of the workday (Tr. 53-54). The VE testified that such a person could still perform the three jobs identified in the second hypothetical, *i. e.*, information clerk, house sitter, and office helper (Tr. 54). Significantly, the ALJ elicited no testimony from the VE about whether any of the jobs he identified were consistent

5

with the job descriptions contained in the Dictionary of Occupational Titles ("DOT") (Tr. 51-55).

In his written decision, the ALJ determined that the claimant's RFC included the limitations from the third hypothetical posed to the VE (Tr. 15). He then adopted the VE's testimony that the claimant could perform the light jobs of information clerk, house sitter, and office helper (Tr. 23). Furthermore, the ALJ specifically found that the VE's "testimony [wa]s consistent with the information contained in the [DOT]" (Tr. 23).

Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Although the VE testified that there was no conflict between his testimony and the DOT, there *is* a conflict that the ALJ was required to resolve. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

The ALJ should undoubtedly have asked the VE whether there was any conflict between his testimony and the DOT before concluding that there was none, because "[w]hen vocational evidence provided by a VE or VS is not consistent with information

6

in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4. The ALJ's failure to do this, however, would be harmless error if there were in fact no conflicts between the VE's testimony and the DOT, *see Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) ("Although we agree that the ALJ erred by not inquiring about whether there were any conflicts between the VE's testimony about the job requirements for the jobs identified and the job descriptions in the DOT, we conclude that this error was harmless because there were no conflicts."), but the error was not harmless here because there are multiple conflicts that the ALJ should have resolved.

First, a conflict exists with the jobs of information clerk and house sitter. The job of information clerk requires a reasoning level of 4, *see* DICOT § 237.367-018, while the job of house sitter requires a reasoning level of 3, *see* DICOT § 309.367-010. A reasoning level of 4 is defined as the ability to "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form." *See* DICOT § 237.367-018. A reasoning level of 3 includes "deal[ing] with problems involving several concrete variables in or from standardized situations." *See* DICOT § 309.367-010. This appears to be in direct contrast to the ALJ's RFC, which found that the claimant could only perform simple

tasks and make simple work-related decisions (Tr. 15). *See Herbert v. Barnhart*, 2002 WL 31180762, at *8-9 (D. Kan. Sept. 19, 2002) (reversing and remanding to ALJ, partially because the identified jobs of cashier and ticket seller required frequent reaching, handling, and fingering which appeared to be in conflict with the claimant's RFC restrictions from rapid, repetitive use of hand controls) [unpublished opinion]. The Commissioner asserts that there is no conflict because the reasoning levels are related to a claimant's education level and not a specific mental or skill requirement, and that this claimant's background of twelfth grade education and vocational training render him capable of performing the identified jobs. The Court disagrees. In the Tenth Circuit, this apparent inconsistency is reversible error. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding a limitation to simple and routine work tasks "inconsistent with the demands of level-three reasoning," and reversing "to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE."). *See also Ward v Colvin*, 2015 WL 9438272, at *3 (W.D. Okla. Sept. 17, 2015) (slip op.) ("The Court declines to find, as urged by the Commissioner, that to the extent GED reasoning levels are not specific mental or skill requirements, they can be disregarded when addressing the mental demands of jobs listed in the DOT."). The ALJ failed to ask the VE to reconcile this conflict or clarify how the DOT could be applied to the claimant's mental limitations, and the ALJ therefore committed reversible error in violation of this circuit's holding in *Haddock*. *See also Krueger v. Astrue*, 337 Fed. Appx. 758, 760-762 (10th Cir. 2009) (reversing and remanding in part because ALJ

failed to resolve conflict between VE's testimony and DOT job descriptions); *Hackett*, 395 F.3d at 1175 (applying *Haddock* to nonexertional limitations); *Poppa*, 569 F.3d at 1173 (noting that SSR 00-4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]").

The Commissioner further argues that the ALJ is only required to ask the VE to identify any conflicts and that there is no authority requiring the ALJ to identify conflicts not noted by the VE, *see Manley v. Barnhart*, 154 Fed. Appx. 532, 537 (7th Cir. 2005), but this is error. Unlike the practice in the Seventh Circuit, in *this circuit* the ALJ must resolve any apparent conflict between the VE's testimony and the DOT. *See Burns v. Barnhart*, 312 F.3d 113, 126 n.8 (3rd Cir. 2002) (discussing Circuit split); *compare Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) ("To the extent that there is any implied or indirect conflict between the [VE's] testimony and the DOT in this case . . . the ALJ may rely upon the [VE's] testimony provided that the record reflects an adequate basis for doing so.") *and Jones v. Apfel*, 190 F.3d 1224, 1229-1230 (11th Cir. 1999) ("We agree with the Sixth Circuit that when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT."), *with Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir. 1995) ("[W]hen expert testimony conflicts with the DOT, the DOT controls.") *and Haddock*, 196 F.3d at 1091 ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."). This is in keeping with the rule that the

"adjudicator must explain the resolution of the conflict *irrespective of how the conflict was identified*." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 [emphasis added].

The error regarding the jobs of information clerk and house sitter would nevertheless be harmless error if there were other jobs identified that the claimant could perform. *See, e. g., Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding any error on whether claimant could perform job was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country."). But here the error is not harmless because there exist additional errors with the remaining job identified by the VE and adopted by the ALJ, *i. e.*, office helper. The DOT description for this job requires *frequent* near acuity in vision, where "frequent" is defined as existing from 1/3 to 2/3 of the time. DICOT § 239.567-010. The claimant contends that the ALJ's RFC finding that the claimant was "unable to read very small print but can read ordinary newspaper for book print" is incompatible with this requirement of frequent near visual acuity because the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* defines "near acuity" as "clarity of vision at 20 inches or less." App. C., No. 15. The Court agrees. Given the Plaintiff's left eye loss of vision and the ALJ's RFC assessment of all the evidence, the claimant may not be able to perform this job, and it is not clear that this job conforms to the claimant's RFC. As noted above, in this circuit "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's

testimony as substantial evidence to support a determination of nondisability." *Haddock*, 196 F.3d at 1091.

Here, it is clear that the ALJ did nothing to resolve the multiple apparent conflicts between the VE's testimony and the DOT, and was therefore not entitled to rely on the VE's testimony as substantial evidence. Accordingly, the Commissioner's decision must be reversed and the case remanded for further proceedings. On remand, the ALJ should resolve any conflicts between the VE's testimony and the DOT and determine what impact, if any, such resolution has on the issue of the claimant's disability.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 24th day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**